# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Safeway Transit LLC and Aleksey Silenko,<br><br>Plaintiffs,<br><br>v.<br><br>Discount Party Bus, Inc., Party Bus MN LLC, and Adam Fernandez,<br><br>Defendants. | Case No. 15-cv-3701 (JRT/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Chad A. Snyder and Michael H. Frasier, Rubric Legal LLC, 233 Park Avenue South, Suite 205, Minneapolis, MN 55415, for Safeway Transit LLC and Aleksey Silenko

Adam Edward Szymanski, Casey A. Kniser, and Eric H. Chadwick, Patterson Thuente Christensen Pedersen, PA, 80 South Eighth Street, Suite 4800, Minneapolis, MN 55402, for Discount Party Bus, Inc., Party Bus MN LLC, and Adam Fernandez

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 79]. Specifically, Plaintiffs move for partial summary judgment against Defendants on Count III of the Second Amended Complaint ("SAC") for trademark infringement under 15 U.S.C. § 1125(A), and on Count VII for restoration of their rights in the domain name rentmypartybus.com under 15 U.S.C. § 1114(2)(D)(v) [Doc. No. 8]. They also appear to seek a finding as a matter of law that as a result of the infringement, Plaintiffs are entitled to the entirety of Defendants' revenues for the period May 1, 2014-the date the complaint was filed on September 21, 2015. (Pls.' Mem. Supp.

Mot. Summ. J. at 1-2 [Doc. No. 79].)  The motion was referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a) [Doc. No. 89].  For the reasons set forth below, the Court recommends the motion be denied in its entirety.

## I.      Background

Plaintiffs and Defendants are fierce competitors in the business of providing "party buses" for hire.  Plaintiffs' Second Amended Complaint ("SAC") accuses Defendants of attempting to steal Plaintiffs' business by infringing Plaintiffs' trademarks "Rent My Party Bus," "952 LIMO BUS," and "Party Bus MN," and by fraudulently registering them as Defendants' own.  (SAC ¶¶ 1, 59-65, 70-74 [Doc. No. 8].)  Plaintiffs also allege Defendants attempted to steal the associated web domains.  (*Id.* ¶¶ 85-92.)  In addition to the counts for trademark infringement and domain "hijacking" that are the subject of the instant motion, the SAC alleges causes of action for fraudulent federal registration of trademarks, cancellation or assignment of federal registration, cancellation of state registration for trademarks, fraudulent state registration for trademarks, and violation of Minnesota Statute § 325D.44 [Doc. No. 8].

### A.      Safeway Transit

In 2008, Gennady Silenko formed the company Party Bus MN LLC.  Plaintiff Aleksey Silenko was identified in the Articles of Organization as the company's contact.  (Frasier Decl. Ex. A (2008 Articles of Organization for Party Bus MN LLC) [Doc. No. 81-1].)  In October of that year, the name of the business was changed to Safeway Transit LLC.  (Frasier Decl. Ex. B (Articles of Organization for Safeway Transit LLC) [Doc. No.

81-1].)  Plaintiffs' business has grown over the years, starting with one bus in 2008 and currently running a fleet of sixteen buses.  (Silenko Decl. ¶ 11 [Doc. No. 82].)[1]

In 2008, Plaintiffs purchased the domains www.RentMyPartyBus.com and www.PartyBusMN.com.  (Frasier Decl. Ex. C (Receipts from GoDaddy) [Doc. No. 81-1].)  Plaintiffs used www.PartyBusMN.com as a landing page to direct users to www.RentMyPartyBus.com.  (Silenko Decl. ¶ 4.)  Plaintiffs also launched Facebook pages using both marks[2] that year, one at www.Facebook.com/RentMyPartyBus and the other at www.Facebook.com/PartyBusMN.  (Silenko Decl. ¶ 6.)  In 2015, Plaintiffs merged the latter page into the former page, and Silenko states in his declaration that the Facebook page currently has 28,000 followers.  (*Id.*)  In addition, from 2008 to the present, "at least some of Safeway Transit's buses" have prominently displayed "Rent My Party Bus" on the side or back of the bus.[3]  (Silenko Decl. ¶ 5.)

---

[1] Defendants fault Silenko's affidavit for being unsworn.  However, Silenko's affidavit was made "[u]nder penalty of perjury."  28 U.S.C. § 1746 (permitting a matter to be supported by a declaration that substantially states "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)").

[2] The Court will at times refer in this Background section to the disputed terms "Rent My Party Bus," "Party Bus MN," and "952 Limo Bus" as "marks" for ease of reference and to avoid the cumbersome "alleged marks," but in doing so does not pre-judge the question of whether any of the terms are in fact protectable as trademarks.  That discussion is saved for Section III.A below.

[3] Plaintiffs' memorandum in support of their motion for summary judgment contained two statements of purported fact regarding Silenko's marketing efforts that were not supported by Silenko's declaration.  First, the memorandum stated that in 2011, "Safeway Transit built a new website at www.partybusMN.com separate from its website at www.rentMyPartyBus.com," but the declaration makes no such assertion.  Second, the memorandum states that "Safeway Transit's buses were all marked Rent My Party Bus

In 2009, Silenko purchased business cards for Safeway Transit "using the names Rent My Party Bus and Party Bus MN." (Silenko Decl. ¶ 7.) He has continuously used those business cards since then. (Silenko Decl. ¶ 7.) The next year, he "created Twitter handles for Rent My Party Bus and Party Bus MN," and has used both Twitter accounts consistently since, although his declaration does not indicate how frequently he uses those accounts or how many followers they have. (Silenko Decl. ¶ 8.)

In 2011, Safeway Transit acquired the phone number (952) 546-6287 (952 LIMO BUS). Silenko purchased the domain www.952LimoBus.com, built that website, and purchased business cards with that name.[4] (Silenko Decl. ¶ 9.) Safeway Transit "began placing decals with the names 952 LIMO BUS and Party Bus MN on the outside and interior of some of the buses" in 2011 or early 2012, and continues to do so today. (Silenko Decl. ¶ 10.) Safeway Transit expanded its marketing of all three marks in 2013 by purchasing advertising on the radio, in print publications like City Pages, All Over Media, and Lavender, and online at sites such as The Knot, Wedding Wire, Limos.com, White Sparks, and Yext. (Silenko Decl. ¶ 11.)

Silenko's declaration does not provide any detail, however, as to how much money has been spent on that advertising, how frequently it appeared in which media, how many individuals were exposed to the advertising, or to what extent any particular

on the side or back," but Silenko's declaration says only that "some" of the buses were marked that way. (Pls.' Mem. Supp. Mot. Summ. J. at 3.)

[4] The declaration does not indicate to what extent Safeway has used the "952 LIMO BUS" business cards as opposed to the previously-mentioned business cards incorporating the other claimed marks.

mark was featured in the advertising. Moreover, Plaintiffs did not submit any examples or specimens of their own advertising or promotional materials depicting any of the asserted marks.

Nothing in the record indicates that Plaintiffs have at any time attempted to register Rent My Party Bus, 952 LIMO BUS, or Party Bus MN as trademarks with the State of Minnesota or with the United States Patent and Trademark Office (USPTO).

### B.     Discount Party Bus

Adam Fernandez is the sole owner and officer of Discount Party Bus, Inc., and Party Bus MN LLC.  (Frasier Decl. Ex. E at 86:7 (Fernandez Dep.) [Doc. No. 81-1].)  He states he first started his party bus rental service in 2000 or 2001 under the name Discount Party Bus, which he operated initially as a sole proprietorship.  He later converted it to an LLC and then to a corporation.  (Frasier Decl. Ex. D ¶¶ 3-4 (2014 Fernandez Aff.)[5] [Doc. No. 81-1].)  Fernandez testified in his deposition as the Rule 30(b)(6) representative for all Defendants in this case that he began using the name "Party Bus MN LLC" in connection with his business in 2000 (Frasier Decl. Ex. E at 53:22-25 (Fernandez Dep.)), and that today, Discount Party Bus and Party Bus MN LLC are separate active entities but operate as one company.  (*Id.* at 10:1-12:9.)

In sworn answers to interrogatories, Defendants state they have continuously used Party Bus MN in print and Internet advertising from 2000 or 2002 to the present; that they used Rent My Party Bus in print advertising from 2004 to 2008 or 2009; and that

---

[5] Fernandez submitted this affidavit in connection with an earlier lawsuit between the parties, described *infra* in Section I.C.

they used 952 LIMO BUS (and, it appears, 612 LIMO BUS, 763 LIMO BUS, and 651

LIMO BUS as well) in print and Internet advertising and in business cards, letters, and

emails from 2006 to 2008 or 2009.[6]  (Frasier Decl. Ex. G (Defendants' Responses to

Plaintiffs' Interrogatories Nos. 1, 2, 4, 5, and 6) [Doc. No. 81-1].)  Fernandez's

testimony, while often vague and confusing, was, for the most part, consistent with the

interrogatory responses as to the claimed dates of use in advertising.  (Frasier Decl. Ex. E

at 53:16-25, 57:6-16 (Fernandez Dep.) (used Party Bus MN as a business name from

2000-through the date of deposition, but stopped using Party Bus MN to advertise his

business after Plaintiffs began using the website with the same domain name); *id.* at

60:10-22 (used Rent My Party Bus from 2004 through 2008 or 2009); *id.* at 61:2-25,

62:1-3 (used 952 LIMO BUS from at least 2004 through 2008 or 2009).)

    Plaintiffs dispute Defendants' claim that Defendants began using any of the marks

as actual trademarks, or even as business names, before Plaintiffs began to do so, but

point out that, in any event, Fernandez testified he stopped using Rent My Party Bus and

952 LIMO BUS to advertise party bus services in 2008 or 2009.  (Frasier Decl. Ex. E at

60:10-22, 61:2-25, 62:1-3 (Fernandez Dep.).)  Fernandez further testified that he stopped

using 952 LIMO BUS in his advertising because he saw that Plaintiffs had begun to use

it.  (*Id.* at 65:4-11.)  He testified he stopped using Party Bus MN in advertising when

Plaintiffs launched a website with the same name, but has continuously used Party Bus

MN as a business name from 2002 to the present.  However, he did not actually form a

_____

[6]  Fernandez acknowledged in his deposition that he never owned the telephone number
952 LIMO BUS because "it was unavailable."  (Frasier Decl. Ex. E at 66:11-15
(Fernandez Dep.).)

6

limited liability corporation named Party Bus MN LLC until May 1, 2014. (Frasier Decl. Ex. F (2014 Articles of Organization for Party Bus MN LLC); Frasier Decl. Ex. E at 15:17-17:3 (Fernandez Dep.); *see also* Kniser Decl. Ex. E at 4 (Certificate of Business Organization) [Doc. No. 86-5]; Frasier Decl. Ex. E at 54:20-55:3 (Fernandez Dep.); Frasier Decl. Ex. F (2014 Articles of Organization for Party Bus MN LLC).)

Defendants also point to several documents they contend evidence their use of these marks prior to Plaintiffs' use:

- Two documents bearing October 2004 dates, one a letter addressed to the attention of Adam Fernandez at "Party Bus MN LLC" from an entity offering to provide drug and alcohol testing services, and the other a contract for those services signed by Fernandez "For Party Bus MN LLC." (Kniser Decl. Ex. B [Doc. No. 86-2].)[7]

- An advertisement displaying "Rent My Party Bus" with Fernandez's telephone number, identified by Fernandez at his deposition as a print advertisement or flyer created in "late 2000 sometime, . . . '08, '09, '10, in that area." (Kniser Decl. Ex. C (Fernandez Dep. Ex. 19) [Doc. No. 86-3]; Kniser Decl. Ex. F at 164-68 (Fernandez Dep.) (referring to Ex. 19).)

---

[7] The Court notes that although Defendants' counsel states these documents were included among documents produced by Defendants (Kniser Decl. at ¶ 3 [Doc. No. 86]), there is no statement by Fernandez himself, either in his deposition or by declaration, identifying these documents as authentic business records.

# WANT TO PARTY? RENT MY PARTY BUS!





**"TWICE THE PARTY FOR HALF THE PRICE"**

**THE TWIN CITIES MOST AFFORDABLE BUSES**



# RENT MY

# PARTY BUS





- Bachelor/ette parties
- Weddings
- Night Clubbing
- Birthdays
- Proms
- Corporate Events
- Sporting Events
- Concerts
- Casino Tours
- Christmas Light Tours

**Call for availability**

**ADAM**

**(763) 482-0758**



Owned and operated by Party Bus MN LLC

Dayton, MN

(Frasier Decl. Ex. W at 187 [Doc. No. 81-1].)

- Fernandez testified this advertisement ran in print publications, and was handed out in large numbers to bars and restaurants where they were hung up "in like a bathroom stall."  (*Id.*)  Fernandez further testified that although he did not create new advertisements using that mark after that time, he still sees the old flyers posted in bathroom stalls.  (*Id.* at 166:16-21; 167:1-15.)

- An advertisement prominently displaying "952 limo bus" along with Fernandez's telephone number, with three "Online Listing Insertion Orders" for twincitiesfun.com dated October 4, 2004, November 7, 2004, and January 3, 2007.  (Kniser Decl. Ex. H [Doc. No. 86-8].)[8]

---

[8] As with the October 2004 documents discussed in the preceding footnote, these documents are identified only by counsel as having been a part of Defendants' document production (Kniser Decl. at ¶ 9 [Doc. No. 86]), and there is no testimony or declaration by Fernandez himself that they are authentic business records.

# YOU HAVE NEVER PARTIED LIKE THIS BEFORE!!



"TWICE THE PARTY FOR HALF THE PRICE"

THE TWIN CITIES MOST AFFORDABLE BUSES

## 952

## limo bus



- Bachelor/ette parties
- Weddings
- Night Clubbing
- Birthdays
- Proms
- Corporate Events
- Sporting Events
- Concerts
- Casino Tours
- Christmas Light Tours



**Call for availability**

**ADAM**
**(763) 482-0758**



(*Id.*)

### C.    Discount Party Bus's 2014 Lawsuit Against Safeway Transit

This case was not the first trademark dispute between the parties.  In a 2014 lawsuit filed in Hennepin County District Court, Discount Party Bus alleged that Silenko and Safeway Transit were infringing the former's rights in the Discount Party Bus mark. (Frasier Decl. Ex. D (2014 Fernandez Aff.).)  Specifically, Fernandez and Discount Party Bus alleged that Silenko and Safeway Transit acquired the domain name discountpartybus.com, and that at various times during the period 2009-2011, they redirected visitors from discountpartybus.com, initially to Safeway Transit's own website rentmypartybus.com and, in early 2014, to Safeway Transit's website 952limobus.com. (*Id.* at ¶¶ 9, 15, 18; Frasier Decl. Ex. H (Leighton Aff. Exs. A-C (Letters to Silenko and Safeway Transit)) [Doc. No. 81-1].)

The Hennepin County lawsuit was settled in April 2014 when Silenko and Safeway Transit agreed to transfer discountpartybus.com and related domains to Discount Party Bus.  (Snyder Decl. Ex. 2 (Settlement Agreement) [Doc. No. 37].)  But although there is no dispute that Fernandez knew at the time that Safeway Transit and Silenko were using Rent My Party Bus, Party Bus MN, and 952 LIMO BUS in their advertising, the settlement, and the cease-and-desist letters from counsel for Discount Party Bus that preceded the lawsuit, did not challenge Plaintiffs' use of those marks.  On the contrary, the cease-and-desist letters focused only on Discount Party Bus's rights in the Discount Party Bus mark, and acknowledged without apparent concern that Safeway Transit was using the domains www.RentMyPartyBus.com, www.PartyBusMN.com, and

www.952limobus.com.  (Frasier Decl. Ex. H (Leighton Aff. Exs. A-C (Letters to Silenko and Safeway Transit)).)

### D.   Defendants' Post-Lawsuit Actions Regarding the Disputed Trademarks

#### 1.   Assumed Names and Trademark Registrations

Shortly after settling the 2014 lawsuit, Fernandez filed documents establishing Party Bus MN LLC with the Minnesota Secretary of State.[9]  The same day, Party Bus MN LLC identified "952 Limo Bus" and "Rent My Party Bus" as "assumed names" for the business.  (Frasier Decl. Exs. I, J [Doc. No. 81-1].)  On November 11, 2014, Party Bus MN LLC applied for and was granted two trademark registrations in Minnesota. One was for the word mark 952 LIMO BUS, along with a logo comprising that mark. The application, which was signed by Fernandez, states that the business first used the mark in commerce on June 20, 2006.  (Frasier Decl. Ex. K [Doc. No. 81-1].)  Fernandez admitted in his deposition, however, that the 952 LIMO BUS logo he sought to register was one he had never used.  (Frasier Decl. Ex. E at 74:6-77:21 (Fernandez Dep.).)[10]

---

[9] Under Minnesota law, an LLC may not be formed under the same name as an existing LLC.  Minn. Stat. 322B.12.  However, Silenko had changed the name of his LLC from Party Bus MN LLC to Safeway Transit LLC in 2008.

[10] Plaintiffs' memorandum in support of their motion contends the logo depicted in Fernandez's 952 Limo Bus trademark application "is the logo Safeway Transit adopted in 2013 and continues to use today" and cites "Silenko Dec." in support of that statement. (Pls.' Mem. Supp. Mot. Summ. J. at 8.)  But the Silenko declaration is silent on that subject, and as already noted, Plaintiffs submitted no examples depicting their own use of the asserted marks.

The second Minnesota trademark registration was for Party Bus MN. Fernandez claimed in that application that the business had first used that mark on October 10, 2002. (Frasier Decl. Ex. L [Doc. No. 81-1].)

On November 25, 2014, counsel on behalf of Party Bus MN LLC filed an application with the USPTO to obtain federal registration of the mark "RENT MY PARTY BUS." (Frasier Decl. Ex. M [Doc. No. 81-1].) The application claimed the business had used the mark in commerce "at least as early as" December 31, 2002, and that it had "become distinctive of the goods/services through the applicant's substantially exclusive and continuous use in commerce . . . for at least the five years immediately before the date [of the application]." The application also included a specimen purportedly taken from Defendants' website. (*Id.*) The registration issued on July 28, 2015. (Frasier Decl. Ex. U (ICANN Decision) [Doc. No. 81-1].) However, in their Complaint in this action, Plaintiffs alleged that the specimen was in fact a screenshot of the Safeway Transit website. (Complaint at ¶ 34 [Doc. No. 1].) A month later, on October 21, 2015, Defendants' trademark counsel filed an Application for Correction of Registrant's Mistake in Registration, stating that the specimen was submitted in error and did not actually relate to Defendants' business. A new specimen was submitted, consisting of the flyer that became Exhibit 19 to Fernandez's deposition. (Frasier Decl. Ex. W [Doc. No. 81-1]; Kniser Decl. Ex. C (discussed above at p. 8).)

On December 30, 2014, counsel for Party Bus MN LLC filed another application with the USPTO, this one to register the mark "952 LIMO BUS." (Frasier Decl. Ex. N [Doc. No. 81-1].) The original application asserted only an "Intent to Use," but a

subsequent "Amendment to Allege Use" filed on March 18, 2015, stated that the mark had first been used in commerce by the applicant "as least as early as" December 31, 2004, and "is now in use in such commerce." (Frasier Decl. Ex. O [Doc. No. 81-1].) The subsequent filing included an undated specimen that appears to be identical to the flyer produced by Defendants in this case with the 2004 and 2007 "Online Listing Insertion Orders" for twincitiesfun.com, discussed above at page 10. (Kniser Decl. Ex. H [Doc. No. 86-8].) The application was granted and the trademark registered on June 2, 2015. (Frasier Decl. Ex. T (ICANN Decision) [Doc. No. 81-1].)

Finally, on July 2, 2015, Party Bus MN LLC, again through counsel, filed an application with the USPTO to register the mark "PARTYBUSMN." (Frasier Decl. Ex. P [Doc. No. 81-1].) The application stated the applicant had used the mark in commerce "at least as early as" July 1, 2015, and included a specimen of use that appears to be an undated screenshot of a portion of a page from the Discount Party Bus website which prominently display at the bottom the banner "partybusmn,com." Nothing in the application indicates when that screenshot was created or during what period of time that banner was included on Defendants' website.[11] The record before the Court does not indicate whether the mark was eventually registered.

_____

[11] Plaintiffs, citing Defendants' responses to their Interrogatory No. 9, state Fernandez could not identify where or when the image in the screenshot was used in commerce. (Pls.' Mem. Supp. Mot. Summ. J. at 9; Frasier Decl. Ex. Q [Doc. No. 81-1].) But Interrogatory No. 9 refers only to a document bearing Bates number DIS 000361, and nothing in the Interrogatory or the response (or, for that matter, in Fernandez's deposition) identifies the document bearing that Bates number as the screenshot submitted with the trademark application.

Defendants' Answer to the SAC initially asserted counterclaims against Plaintiffs seeking, *inter alia*, an order declaring their registrations for the three disputed marks to be valid and enforceable, that the Defendants were the senior users of those marks, and that Defendants were entitled to the domain names rentmypartybus.com and 952limobus.com. (Amended Answer [Doc. No. 28].)  Defendants subsequently dismissed their counterclaims without prejudice [Doc. No. 47].

Plaintiffs assert in their memorandum that Defendants subsequently cancelled the state and federal trademark registrations.  (Pls.' Mem. Supp. Mot. Summ. J. at 19, 20.) Although Plaintiffs did not cite any support for that assertion, Defendants' responsive memorandum did not dispute it.

### 2. Defendants' Allegedly Infringing Use of the Disputed Marks in Internet Advertising

In addition to Defendants' efforts to secure both Minnesota and federal registrations of the disputed marks, Defendants also made use of 952 LIMO BUS and Rent My Party Bus in their Internet presence and advertising after they settled the 2014 lawsuit with Plaintiffs.  As the sole owner and officer of Discount Party Bus and Party Bus MN LLC, Fernandez testified he has always been in charge of the advertising decisions of his companies.  (Frasier Decl. Ex. E at 86:7-12 (Fernandez Dep.).)  To assist in his advertising efforts, he hired a freelancer named "Edward," whose last name he could not recall, to set up social media and to build the business's website.  (*Id.* at 91:12-14.)  Fernandez delegated to Edward the authority to purchase advertising spots and perform work without getting feedback in advance.  (Frasier Decl. Ex. BB at 198:4-

199:12 (Fernandez Dep.) [Doc. No. 81-1].)  Edward in turn hired a California company

named Internet Local Listings to build the website.  (Frasier Decl. Ex. E at 109:6-110-6

(Fernandez Dep.).)  The contract with Internet Local Listings, which Fernandez signed,

specified that the website was to utilize ten "keywords,"[12] among which were "Rent My

Party Bus" and "952 Limo Bus."  (Frasier Decl. Ex. X at 14 [Doc. No. 81-1].)  The

contract called for the website to be launched in 2014, but the record before the Court

does not clearly indicate when it was actually launched.

     Consistent with the requirements of the contract, Defendants' new website, at

www.discountpartybussaintpaulmn.com, used the term "952 Limo Bus" in connection

with the advertising of Defendants' buses and services.  (Frasier Decl. Ex. Y (Screenshots

of www.discountpartybussaintpaulmn.com) [Doc. No. 81-1].)  For example, one page,

headed "Party Busses," stated "hiring a 952 Limo Bus in St. Paul is the best solution,"

"Small 952 Limo Bus in Saint Paul would be ideal for professional and business needs,"

and "952 Limo Bus in Saint Paul are not just one type."

---

[12] Keywords allow an Internet user who wants information on a certain topic to
conduct a search using a "search engine" such as Yahoo or Google to locate web
pages that might suit his needs.  "Search engines look for keywords in places such
as domain names, actual text on the web page, and metatags."  *Retail Servs., Inc.
v. Freebies Publ'g*, 364 F.3d 535, 541 (4th Cir. 2004) (citations omitted).

# Discount Party Bus

*Transportation Service*



## Party Busses

### Saint Paul, MN

Whether it is about birthday parties, sporting events,
visiting a concert as a team, hiring a 952 **Limo Bus** in Saint
Paul is the best solution. These travel and entertainment
options come in top quality comfort factor inbuilt. This is
absolute justice for the money you pay and the kind of
travel ambience you would best prefer. Limo rentals are

## Address

Saint Paul, MN
55104

## Hours

24/7

## Additional Articles

Call us 📞 763-482-0758                                  Facebook

parties, funerals, weddings, transporting to clubs,                    Bus
transporting to casinos, transporting to bars and more.        Party Busses
Prom events, sweet 16 events, and graduation events are       Rent My Party
others you might want to be involved in style is best                  Bus
accomplished with a limo travel and you getting out of it.   Partybus Rental
                                                              Dance Floor
Small 952 **Limo Bus** in Saint Paul would be ideal for         Party Bus
professional and business needs. They need not be as big
as it would be the case for entertainment needs. Being
clear about the needs involved in hiring the limo. There are
different types of rental packages made available for limos.
When you know your needs best, you can choose the most
ideal rental package. This can be the best vehicle you are
taking for the occasion you are thinking of when you plan
things well.

952 **Limo Bus** in Saint Paul are not just one type. They are
of many types and nothing beats the look of getting out of
the limo. Look for the best in the business deals. You can
ask for the quote and check the fleets and the features
before you book one for your team. When you are offered
varieties why should you settle down for something less?
You can check into all the models made available and you
can make your decisions accordingly. When it comes to
Limo, the chauffeur is important. You should be having the
fun you deserve, which means you will need an excellent
chauffeur!

Discount Party Bus © 2015 | Sitemap                         Facebook

(*Id.* at 23, 24.)

The website also had a page with the words "Rent My Party Bus" displayed in

large font:



**Discount Party Bus**

Transportation Service

Home   About   Services   Gallery

Contact

**Rent My Party Bus**

Woodbury, MN

**Address**

Saint Paul, MN
55104

(*Id.* at 28.)

The same terms found their way into Defendants' social media posts. For example, on September 21, 2015, Discount Party Bus posted the following to its Facebook page:



**Discount Party Bus**
September 21 · 🌐

Our #partybusrental gets your party on the go, with private VIP treatment and all the bells and whistles! http://discountpartybussaintpaulmn.com /services.html



Chartered Bus | Discount Party Bus | 952 Limo Bus
Discount Party Bus provides services such as Discount Party Bus, Party Busses, and Rent My party Bus in Saint Paul, MN.

DISCOUNTPARTYBUSSAINTPAULMN.COM

(Frasier Decl. Ex. Z at 32 [Doc. No. 81-2].)  Several days later, the following appeared:



(*Id.* at 31.)

Defendants also used Rent My Party Bus after a hashtag in several tweets on their Twitter account in late 2015:



(Frasier Decl. Ex. AA at 34-36 [Doc. No. 81-2].)



(*Id.*)

 

(*Id.*)

     In their discussion of "Defendants' Infringement," Plaintiffs cite no examples of use by Defendants of Party Bus MN as a trademark on their website or in social media in 2014 or 2015. (*See* Pls.' Mem. Supp. Mot. Summ. J. at 11-15.) The Court can find only two references among the exhibits filed in connection with the subject motion to Defendants' possible use of Party Bus MN as a trademark during this period. First, Defendants' 2014 application to register PARTYBUSMN as a trademark in Minnesota states that the business uses the mark on "advertising, social media, internet and website, clothing, business cards." (Frasier Decl. Ex. L.) Second, the specimen submitted with Defendants' USPTO application to register PARTYBUSMN (discussed above at p. 14) prominently displays "partybusmn,com" on what appears to be a partial screenshot of a page from Defendants' website. (Frasier Decl. Ex. P. [Doc. No. 81-1].)

22

### 3. Defendants' ICANN Actions

On August 28, 2015, Fernandez filed two complaints with the Internet Corporation for Assigned Names and Numbers ("ICANN").  In those complaints, Fernandez claimed he was the rightful owner of the trademarks 952 LIMO BUS and Rent My Party Bus, and requested that the following domain names (which Plaintiffs had purchased) be transferred to him: www.952LimoBus.com and www.RentMyPartyBus.com.  Eventually, one ICANN panel concluded that Fernandez had not shown he had trademark rights in 952 Limo Bus and therefore was not entitled to the domain of the same name.  (Frasier Decl. Ex. T (ICANN Decision) [Doc. No. 81-1].)  The other panel concluded that Fernandez had proven ownership of the Rent My Party Bus mark; that Silenko was using the corresponding domain name in an identical or confusingly similar manner; that Fernandez had made a prima facie showing that Silenko did not have a legitimate interest in that domain name, and Silenko had not rebutted that showing; and that Silenko had registered and used the domain name in bad faith.  (Frasier Decl. Ex. U (ICANN Decision) [Doc. No. 81-1].)  The panel accordingly ordered that domain be transferred to Party Bus MN LLC.  (*Id.*)

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if the

evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In considering a motion for summary judgment, the court views the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).

On the other hand, the party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## III. Discussion

### A. Trademark Infringement

Plaintiffs' Count III claims that Defendants' Internet use of Rent My Party Bus, 952 Limo Bus, and Party Bus MN, described above, constitutes trademark infringement under the Lanham Act, specifically 15 U.S.C. § 1125(a)(1)(A). That section provides in pertinent part:

**(a) Civil action**

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> > **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, …
> > . . . .
> > shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Although Plaintiffs do not hold federal registrations for any of the disputed marks, federal registration is not a prerequisite for recovery under this section. *Co-Rect Prod., Inc. v. Marvy! Advert. Photography, Inc*., 780 F.2d 1324, 1329-30 (8th Cir. 1985) (citing *Thompson Medical Co., Inc. v. Pfizer, Inc.*, 753 F.2d 208, 212 (2d Cir. 1985)). To succeed on a claim for infringement of an unregistered trademark, a plaintiff must show "(1) it has valid, protectable trademarks, and (2) the unauthorized use of those trademarks creates a likelihood of confusion." *Anytime Fitness, LLC v. Edinburgh Fitness LLC*, No. 14-cv-348 (DWF/JJG), 2014 WL 1415081, at *6 (D. Minn. Apr. 11, 2014).

With regard to the first issue, the parties agree here that each of the asserted marks is descriptive. (Pls.' Mem. Supp. Mot. Summ. J. at 20, 22; Defs.' Mem. Opp'n Summ. J. at 2 [Doc. No. 85].) Where an asserted mark is descriptive rather than arbitrary or fanciful, a plaintiff must show that the mark had acquired a secondary meaning prior to the date the defendant commenced using the same or similar mark. *Id.* (citing *Thompson Medical Co.*, 753 F.2d at 212-13 & n.9). To establish secondary meaning, the plaintiff must show that the mark or symbol "by long and exclusive use and advertising . . . in the sale of [the plaintiff's] goods . . . [has] become so associated in the public mind with such goods . . . that it serves to identify them and distinguish them from the goods . . . of others." *Id.* (citing *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1219 (8th Cir. 1976) (internal quotes omitted)). There must be "an association formed in the minds of the consumers between the mark and the source or origin of the product." *Id.* This does not require that the consumer necessarily be able to name that source, but "the

ultimate inquiry is whether in the consumer's mind the mark denotes a 'single thing coming from a single source.'" *Id.* (citing *Security Center, Ltd. v. First National Security Centers*, 750 F.2d 1295, 1301 (5th Cir.1985) (primary significance of mark is to identify the source of a product)). Only if secondary meaning is established is the mark entitled to protection as a trademark.

If the plaintiff proves the mark is entitled to protection as a trademark, the plaintiff must then show that the defendant is using the disputed mark in commerce, without authorization, in such a way as to create a likelihood of confusion as to the source or origin of the goods or services. In considering whether use of a mark creates a likelihood of confusion, courts analyze six non-exclusive factors:[13]

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree of competition between the products; (4) the alleged infringer's intent to "pass off" its goods as the trademark owner's; (5) incidents of actual confusion; and, (6) the type of product, its cost, and conditions of purchase.

*Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 759-60 (8th Cir. 2005) (quotations omitted).

To win summary judgment, Plaintiffs in this case must show that as to each requirement, there is no genuine issue of disputed fact. There is no dispute here that the marks Defendants are alleged to have used were identical to the marks Plaintiffs claim, i.e., 952 LIMO BUS, Rent My Party Bus, and Party Bus MN. In other words, this is not a case where a defendant used a mark that is different from the plaintiff's mark and the

---

[13] These have become known as the "*SquirtCo* factors" after the Eighth Circuit's decision in *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).

dispute is over whether they are confusingly similar. Furthermore, there is no question that the parties are in the same business, in the same geographic market, offering the same services. Defendants argue, however, that (1) Plaintiffs have not demonstrated the absence of a genuine dispute of material fact as to the requisite secondary meaning, in part because Defendants themselves claim to have used the terms first, and (2) even if Plaintiffs could satisfy the element of secondary meaning, Defendants' use of the terms during the period contested by Plaintiffs was purely descriptive, i.e., "fair use." With these considerations in mind, the Court looks at each of the three disputed marks.

### 1.    952 LIMO BUS

#### a.  Secondary Meaning

The Court turns first to the question of whether there is a genuine dispute of material fact as to whether "952 LIMO BUS" has, by virtue of Plaintiffs' "long and exclusive use" thereof in advertising Plaintiffs' services, "become so associated in the public mind with [the plaintiff's] goods . . . that it serves to identify them and distinguish them from the goods . . . of others." *Truck Equip. Serv. Co.*, 536 F.2d at 1219. Where a plaintiff seeks to assert an unregistered descriptive mark, "it has the burden of demonstrating that this mark has acquired a secondary meaning." *Shade's Landing, Inc. v. Williams*, 76 F. Supp. 2d 983, 989 (D. Minn. 1999). Secondary meaning can be established through circumstantial evidence. *Heartland Bank v. Heartland Home Finance, Inc.*, 335 F.3d 810, 820 (8th Cir. 2003). Ordinarily, whether "a mark has secondary meaning is a question of fact, not usually suited for determination on summary

judgment." *3M Co. v. Intertape Polymer Grp., Inc.*, 423 F. Supp. 2d 958, 964 (D. Minn. 2006).

Plaintiffs first argue that there is no genuine dispute as to whether 952 LIMO BUS has acquired secondary meaning because Defendants have admitted secondary meaning through their applications to register it as a trademark, and in their responses to Plaintiffs' requests for admissions. In particular, they cite:

- Defendants admitted in response to Plaintiffs' Requests for Admissions that the parties' concurrent use of the mark 952 Limo Bus was likely to cause confusion or mistake as to the origin, sponsorship, or approval of the parties' services.

- Defendants themselves applied for and obtained a trademark registration for 952 LIMO BUS with the State of Minnesota and the USPTO.

- Defendants sought in this action to have their registrations for 952 LIMO BUS declared valid and enforceable, and filed a complaint with ICANN claiming Safeway Transit's use of the domain www.952LimoBus.com infringed Defendants' trademark.

Plaintiffs place great emphasis on the following response to their Request for Admission No. 2:

> 2. Admit that concurrent use of the mark "952 LIMO BUS" by Safeway Transit LLC and Party Bus MN LLC is likely to cause confusion or mistake as to the origin, sponsorship, or approval of the parties' services.
>
> Answer: Admitted.

(Frasier Decl. Ex. G (Defendants' Responses to Requests for Admissions) [Doc. No. 81-1].)[14] Plaintiffs argue that this admission is dispositive on the issue of secondary meaning because by admitting a likelihood of confusion associated with concurrent use

---

[14] Plaintiffs served and Defendants admitted identical requests with respect to "Rent My Party Bus" and "Party Bus MN."

of 952 LIMO BUS, Defendants necessarily acknowledged the term had acquired a secondary meaning. But Plaintiffs read too much into the admission. It is true that use of a mark cannot create a likelihood of confusion as to source if the mark has not acquired a secondary meaning in the minds of an appreciable number of ordinary consumers. *See Co-Rect Prod., Inc. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir. 1985) ("To succeed on a claim of false designation of origin with respect to an unregistered descriptive mark, before a likelihood of confusion or actual confusion is established, the user must show that the mark has acquired a secondary meaning."). But as Defendants point out, the request only asked about secondary meaning generally, and only about concurrent use of 952 LIMO BUS *as a mark*. It did not ask Defendants to admit, and Defendants did not admit, that the likelihood of confusion results from consumers associating the term with Plaintiffs as the source of the services. Thus, even assuming for the sake of argument that both parties use 952 LIMO BUS as a trademark, if there is evidence from which jurors could reasonably reach different conclusions as to whether 952 LIMO BUS first became so associated in the public mind with the Plaintiffs' services that it serves to identify them and distinguish them from the services of others, or whether that association may instead be linked with Defendants and arose out of Defendants' claimed prior use, Plaintiffs cannot prevail on their motion for summary judgment.

The evidence of Defendants' prior use of 952 LIMO BUS consists primarily of Fernandez's own testimony that he used the mark to advertise his company's party bus services beginning in 2004 and continuing until at least 2008 or 2009. Plaintiffs' own use

began in 2011. Although Defendants' evidence on this subject is undoubtedly sparse,

lacking in documentary support, and subject to attack on a number of credibility grounds

(including but by no means limited to the fact that, unlike Plaintiffs, Defendants never

owned the telephone number represented by 952 LIMO BUS), the credibility of the claim

that Defendants had used the mark in advertising their services before Plaintiffs adopted

it is for the jury, not for the Court on a motion for summary judgment. *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge, whether he is ruling on a motion for summary

judgment.").

Plaintiffs argue it does not matter whether Defendants had made prior use of 952

LIMO BUS because they admitted they had not used it from 2008 or 2009 until 2014,

and had therefore presumptively abandoned it. *See* 15 U.S.C. § 1127 (nonuse of a mark

for three consecutive years is prima facie evidence of abandonment). But the issue here

is not whether Defendants had enforceable rights in the mark themselves, but rather

whether Plaintiffs had acquired such rights – i.e., whether the mark had, through

Plaintiffs' own advertising efforts beginning in 2011, acquired a secondary meaning

associated with Plaintiffs' own services – by the time Defendants' allegedly infringing

activity began. The Court also notes that even if Defendants' use of 952 LIMO BUS

(assuming the jury found they used it at all) ended "cold turkey" in 2008 or 2009,

evidence about Plaintiffs' acquisition and alleged use of the domain

discountpartybus.com to redirect visitors from that site to Plaintiffs' website

952limobus.com might be relevant to a jury's consideration of whether a perceived connection between that mark and Defendants' business may have been perpetuated by Plaintiffs' own conduct even after Defendants had discontinued their use of the mark.

As for Defendants' applications to register 952 LIMO BUS as a trademark with the state and with the USPTO, as well as their subsequent ICANN action and counterclaims in this case asserting the validity and enforceability of the rights they claimed in that mark, they certainly tend to refute Defendants' argument that their use of the term on their own website and in their social media posts was purely descriptive and not indicative of source (*see* discussion in Section III.A.1.b below). But they do not compel the inference that, as a result of Plaintiffs' "long and exclusive use" of the term, it had acquired a secondary meaning as an indicator of source for the *Plaintiffs'* services.

Plaintiffs argue, correctly, that the law does not require them to prove consumers could *name* Plaintiffs as the source of those services, but Plaintiffs must still prove the term had acquired a secondary meaning attributable to Plaintiffs' use in commerce as of the time of Defendants' alleged infringement. *3M Co. v. Intertape Polymer Grp., Inc.*, 423 F. Supp. 2d 958, 964 (D. Minn. 2006) (quoting *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994)) ("[T]o establish secondary meaning, the user of a mark must show that by long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others."). Furthermore, a mark must have acquired secondary meaning by the time the alleged infringement occurs. *JDR Indus., Inc. v. McDowell*, 121 F. Supp. 3d 872, 885 (D. Neb. 2015) ("Priority

depends not upon which mark succeeds in first obtaining secondary meaning but upon whether the plaintiff can prove by a preponderance of the evidence that his mark possessed secondary meaning at the time the defendant commenced his use of the mark.") (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1231 (3d Cir. 1978); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1189 (11th Cir. 2011); *PaperCutter, Inc. v. Fay's Drug Co.*, Inc., 900 F.2d 558, 564 (2d Cir. 1990); *Co–Rect Prods.*, 780 F.2d at 1330).

Since Defendants' admissions are not sufficient to establish secondary meaning on summary judgment, then in the absence of survey evidence or evidence of actual confusion, Plaintiffs must rely on circumstantial evidence of secondary meaning. *JDR Industries v. McDowell,* 121 F.Supp.3d 872, 887 (D. Ne. 2015) (*Frosty Treats Inc. v. Sony Computer Entm't Am., Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005)). "Such circumstantial evidence includes the exclusivity, length and manner of use of the mark; the amount and manner of advertising; the amount of sales and number of customers; the plaintiff's established place in the market; and the existence of intentional copying." *JDR Industries,* 121 F.Supp.3d at 1005-06 (citing *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1045 (8th Cir. 1996)).

Taking their points in order, Plaintiffs note that under 15 U.S.C. § 1052(f), the USPTO may accept evidence that an applicant has had five years' exclusive and continuous use of a mark as prima facie evidence of secondary meaning. The Supreme Court has held this presumption may also be applied in the case of an unregistered mark. *Stuart Hall Co. v. Ampad Corp.*, 51 F.3d 780, 789 (8th Cir. 1995) (applying five-year test

to unregistered trade dress) (citing *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[I]t is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)")). But Plaintiffs did not enjoy five years of exclusive use of 952 LIMO BUS. They began using the mark in 2011, and Defendants' allegedly infringing use began, at the latest, in 2014 or 2015.

Furthermore, Plaintiffs offer very little in the way of concrete information about the specifics and extent of their own advertising efforts utilizing 952 LIMO BUS, and virtually nothing about the amount of their own sales or the number of their customers. In fact, the evidence before the Court regarding Plaintiffs' own use of 952 LIMO BUS is not significantly more robust than the evidence of Defendants' claimed prior use, which Plaintiffs criticize as lacking documentary support. Silenko's declaration contains no exhibits that purport to show the referenced advertising or promotional materials. And while Silenko states that Plaintiffs now run sixteen buses and are the "largest or second largest party bus company in the Twin Cities metro," his declaration does not indicate their size or market penetration at the time Defendants' alleged infringement began. (Silenko Decl. ¶ 12.)

Finally, for the reasons described above with regard to the import of Defendants' admissions, there is a genuine dispute of fact as to whether Defendants intentionally copied Plaintiffs' mark. If for example, the jury concludes Defendants never used it themselves, or that Defendants had abandoned it and believed consumers had come to

connect it with Plaintiffs' services, the jury could well conclude Defendants' decision to

incorporate the mark into its Internet and social media advertising in 2014 and 2015

constituted intentional copying of Plaintiffs' mark, from which they could then infer the

secondary meaning Plaintiffs had acquired therein. But that, again, requires credibility

determinations, the weighing of evidence, and the drawing of inferences, which are not

the province of the Court on summary judgment.

Accordingly, the Court finds Plaintiffs' have failed to show there are no genuine

issues of material fact as to whether 952 LIMO BUS had acquired a secondary meaning

as a source-identifier for Plaintiffs' services, and recommends against granting Plaintiffs'

motion on that ground.

### b. Fair Use

Defendants argue in the alternative that Plaintiffs' motion with regard to 952

LIMO BUS must also fail because there is a genuine issue of material fact as to whether

Defendants' allegedly infringing uses were purely descriptive, i.e., "fair use," as opposed

to use as trademarks to convey the source or origin of the services being advertised.

While the Court need not address this argument in light of its recommendation that

summary judgment be denied on other grounds, for the sake of completeness, the Court

will discuss the issue briefly.

The doctrine of fair use applies "only when the allegedly infringing term is used

not as a trademark but 'fairly and in good faith only to describe to users the goods and

services of [a] party, or their geographic origin.'" *Hillerich & Bradsby Co. v. Christian*

*Bros.*, 943 F. Supp. 1136, 1140 (D. Minn. 1996) (quoting *Soweco, Inc. v. Shell Oil Co.*,

617 F.2d 1178 (5th Cir. 1980)). When considering whether Defendant is making fair use of a disputed term, or instead using it as a trademark, courts look at five factors: (1) is the term used to attract public attention, (2) is it a prominent element, (3) is it in a different type-size or style, (4) is it set off, and (5) does a subordinate phrase actually describe the service? *Rainforest Cafe, Inc. v. Amazon, Inc.*, 86 F. Supp. 2d 886, 906 (D. Minn. 1999). The more of these factors are present, the weaker the claim that the defendant is using the term purely descriptively.

Based on the record before the Court on summary judgment, Defendants' fair use argument as to 952 LIMO BUS is without merit. First, fair use is widely regarded as an affirmative defense in a trademark case (even in a common law trademark case). *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004) (defining fair use as an affirmative defense in a trademark case); *Jackson v. Odenat*, 9 F. Supp. 3d 342, 362 (S.D.N.Y. 2014) ("As § 1115 incorporates the common law "fair use" defense, the analysis as to unregistered marks in a Section 43(a) context is the same as for registered marks," citing 2 McCarthy on Trademarks and Unfair Competition § 11:49). Defendants did not plead fair use as an affirmative defense. Affirmative defenses that are not pled are deemed waived. *Dakota Indus., Inc. v. Ever Best Ltd*., 28 F.3d 910, 913 (8th Cir. 1994).

Second, Defendants' argument that their allegedly infringing uses of "952 Limo Bus" were purely descriptive makes no sense. One page of the website www.discountpartybussaintpaulmn.com, headed "Party Busses," stated "hiring a 952 Limo Bus in St. Paul is the best solution," "Small 952 Limo Bus in Saint Paul would be

ideal for professional and business needs," and "952 Limo Bus in Saint Paul are not just one type." (*Id.* at 28-29.) Defendants argue, incongruously, that "the words 952 Limo Bus . . . describe a limo bus that serves Saint Paul, Minnesota." (Defs.' Mem. Opp'n Summ. J. at 5 [Doc. No. 85].) But nothing about the number 952 is even remotely descriptive of a limo bus or a limo bus service that serves the city or area of St. Paul, Minnesota, which has a 651 area code. Instead, the term is arbitrarily inserted in the advertisement at random, almost certainly because the contract with Defendants' website designer required it to make use of the keyword 952 LIMO BUS so that if it did have a source-identifying significance in the mind of a prospective customer who wanted to find the company with whom it was connected, Defendants' website would come up on an Internet search.[15]

Third, Defendants' claim that its recent use of 952 LIMO BUS was "fair use" cannot be viewed in isolation from Defendants' prior uses and its own admissions. Defendants have consistently asserted their prior use of 952 LIMO BUS was as a trademark. They did so in their applications to register 952 LIMO BUS as a trademark with both the State of Minnesota and the USPTO, and they do so in their memorandum in response to Plaintiffs' motion, (Defs.' Mem. Opp'n Summ. J. at 6 ("The record demonstrates that [Defendants] used the words RENT MY PARTY BUS and 952 LIMO BUS in advertising before Safeway entered the party bus market in 2008. . . . In each case the words are used as descriptive marks that identify the business. This is entirely unlike

_____

[15] Notably, Defendants' contract with the website designer did not call for the keywords 651 LIMO BUS, 612 LIMO BUS, or 763 LIMO BUS to be included.

the use of Rent My Party Bus and 952 Limo Bus on the page

discountpartybusstpaulmn.com or #rentmypartybus where the words are merely

descriptive devices, not trademarks.").)  But a comparison between how Defendants used

952 LIMO BUS on their website in 2014 or 2015 (*compare* Frasier Decl. Ex. Y) with the

example they offer of how they used the phrase in their earlier advertising (*see* Kniser

Decl. Ex. H) belies the distinction they are attempting to make.  Finally, the 2014

trademark applications represented that Defendants were *currently* using 952 LIMO BUS

as a trademark, and one can at least infer the same claim from their 2014 ICANN action

seeking transfer of the domain 952limobus.com.

Accordingly, if the District Court does not adopt this Court's recommendation and

determines instead that Plaintiffs have demonstrated the necessary elements to establish

secondary meaning and likelihood of confusion as to 952 LIMO BUS, Defendants' "fair

use" defense would not suffice as an alternative ground to deny Plaintiffs' motion.

### 2.  Rent My Party Bus

#### a.  Secondary Meaning

The Court next turns to whether Plaintiffs have demonstrated that they are entitled

to summary judgment of infringement of their claimed mark "Rent My Party Bus."  As

with "952 LIMO BUS" the Court concludes on the record before it that there is a genuine

issue of material fact as to whether "Rent My Party Bus" has, by virtue of Plaintiffs'

"long and exclusive use" thereof in advertising Plaintiffs' services, "become so

associated in the public mind with [the plaintiff's] goods . . . that it serves to identify

them and distinguish them from the goods . . . of others."

The Court notes at the outset that the phrase is extremely descriptive. Viewed in isolation, it appears to be no more than an exhortation in plain English to rent, from whomever happens to have promulgated the particular advertisement the consumer is viewing at the time, a vehicle that both sides describe generically as a "party bus." Indeed, it is difficult to imagine how a company whose business it is to rent party buses would solicit someone to use its services without saying "Rent my party bus" or words very closely approximating that phrase. And yet, both sides agree the phrase is *capable* of secondary meaning; they just disagree as to whether the other can claim to have developed that meaning.

Plaintiffs cite many of the same facts here as they did in arguing for summary judgment of infringement as to 952 LIMO BUS; their argument fails for the same reasons. First, the admissions, both express and implied, of Defendants through their trademark registrations and litigation responses as to the secondary meaning of the phrase may well estop them from arguing that it has no secondary meaning, but they are not dispositive as to whether *Plaintiffs*' use of the phrase led to such acquired secondary meaning. Fernandez testified he used Rent My Party Bus in print advertising and flyers from 2004 to 2008 or 2009, and that although he did not create new advertisements after that date, he continued to see them posted "in bathroom stalls" in the recent past. Moreover, as with 952 LIMO BUS, evidence concerning Plaintiffs' alleged appropriation of the domain discountpartybus.com and redirection of visitors from that site to Plaintiffs' website rentmypartybus.com might be relevant to whether a perceived

connection between the mark and Defendants' business was perpetuated by Plaintiffs' conduct even after Defendants had discontinued their own (claimed) use of the mark.

Nor does circumstantial evidence get Plaintiffs across the summary judgment finish line on secondary meaning. "Generally, the more descriptive the term, the greater the evidentiary burden to establish secondary meaning." *JDR Indus., Inc. v. McDowell*, 121 F. Supp. 3d 872, 887 (D. Neb. 2015) (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 441 (3rd Cir. 2000)); 2 McCarthy on Trademarks and Unfair Competition § 15:33 (4th ed.) ("Several courts take the sensible position that, for descriptive words, the greater the degree of descriptiveness, the greater the evidentiary burden on the user to establish secondary meaning."). Here, by contrast with the successful plaintiff in *JDR Industries*, Plaintiffs have failed to make a prima facie case that they were the exclusive users of Rent My Party Bus at *any* time from the time they adopted the mark in 2008 until Defendants' alleged infringing activities began in 2014 and 2015. Nothing in the record – even in Silenko's declaration – states that Plaintiffs enjoyed exclusive use of "Rent My Party Bus" from 2008 until Defendants began their allegedly infringing activity in 2014 and 2015.[16] Even setting aside Defendants' claims that they continued to advertise "Rent My Party Bus" until 2009 or perhaps beyond, Plaintiffs' evidence says nothing about the rest of the market. As Silenko's declaration notes, the "Twin Cities party bus market is very competitive."

---

[16] Plaintiffs' brief in support of their motion states that they "exclusively used Rent My Party Bus and Party Bus MN since 2008," and that they "exclusively used [that mark] for 8 years . . . before the infringement." (Pls.' Mem. Supp. Mot. Summ. J. at 21.) The brief does not cite anything in the evidentiary record to support those statements of exclusive use.

(Silenko Decl. ¶ 13.)  And unlike 952 LIMO BUS, with respect to which one might logically draw the inference that the company that owned the telephone number was the exclusive user of the mark, in the absence of evidence one cannot simply assume that no other company in the "very competitive" Twin Cities party bus market used the phrase "Rent My Party Bus" in its advertising.

Finally, as already noted in the discussion of 952 LIMO BUS, the record lacks concrete information about Plaintiffs' sales and customer base, or about the specifics and extent of Plaintiffs' own advertising efforts utilizing Rent My Party Bus.

Accordingly, the Court cannot conclude that Plaintiffs have shown as a matter of law that through their use of Rent My Party Bus, that highly descriptive phrase acquired a secondary meaning in connection with Plaintiffs' party bus services.  The Court therefore recommends against granting summary judgment of infringement as to Rent My Party Bus.

### b.  Fair Use

Defendants argue that even if Plaintiffs establish that their use of Rent My Party Bus has acquired a secondary meaning, Defendants' use on its website and on social media was not indicative of source, but was a fair use of a purely descriptive phrase. (Defs.' Mem. Opp'n Summ. J. at 5.)[17]  As the Court has already noted, if one considers the phrase "Rent My Party Bus" in isolation, the fair use defense would seem to have

_____

[17] As discussed above with regard to 952 LIMO BUS, if the District Court adopts this Court's recommendation that summary judgment should be denied because there is a genuine issue of material fact as to secondary meaning, the District Court may choose not to address whether Defendants' fair use defense provides an alternate ground for denying Plaintiffs' motion.

some legs.  But coming from these Defendants, the argument suffers from several critical

flaws.  As the Court discussed in regard to 952 LIMO BUS, not only did Defendants fail

to plead fair use as an affirmative defense, but Rent My Party Bus cannot be considered

in isolation from Defendants' admissions about its secondary meaning.  Fernandez

testified about a print advertisement and flyer created and posted sometime during 2008 –

2010, which prominently displayed "WANT TO PARTY? RENT MY PARTY BUS!" at

the top and repeated "RENT MY PARTY BUS" in the middle (Kniser Decl. Ex. C

(Fernandez Dep. Ex. 19), reproduced *supra* at p. 8), along with Fernandez's telephone

number.  Referring to that exhibit, Defendants characterize the use of the phrase on that

flyer as a "descriptive mark[] that identif[ies] the business," i.e., a trademark, yet insist

that its use in 2015 on the website, Facebook pages, and Twitter was "merely descriptive

devices, not trademarks."  (Defs.' Mem. Opp'n Summ. J. at 6.)  This is echoed in their

admission that the concurrent use by the parties of "the mark Rent My Party Bus" would

be likely to confuse consumers as to the source of the parties' services.  Defendants do

not argue the phrase *cannot* be a mark; rather, they admit it not only *can* be a trademark

but argue that it in fact *did* function as a trademark, but for Defendants, not for Plaintiffs.

(Defs.' Mem. Opp'n Summ. J. at 9.)  In addition, Defendants filed trademark applications

in 2014 stating they currently used Rent My Party Bus as a trademark, and attaching

Exhibit 19 as a specimen of such use.  (Frasier Decl. Exs. M, W.)

Defendants cannot have it both ways.  They claim they used the phrase in Exhibit

19 as a trademark.  There is no meaningful difference between the way in which they

claim they used the phrase then, and the way in which they used it on, for example, their

website or Facebook page.  (*See, e.g.*, Frasier Decl. Ex. Y at 28; Frasier Decl. Ex. Z at 31.)  Accordingly, if the District Court declines to adopt this Court's recommendation and determines instead that Plaintiffs have demonstrated there is no genuine issue of material fact as to secondary meaning and likelihood of confusion with regard to Rent My Party Bus, Defendants' "fair use" defense would not suffice as an alternative ground to deny Plaintiffs' motion.[18]

### 3.     Party Bus MN

Finally, the Court addresses whether Plaintiffs have demonstrated they are entitled to summary judgment of infringement of their claimed mark Party Bus MN.  As with 952 LIMO BUS and Rent My Party Bus, the Court concludes on the record before it that there is a genuine issue of material fact as to whether "Party Bus MN" has acquired a secondary meaning as a source-identifier for Plaintiffs' party bus services.[19]

Like Rent My Party Bus, the term Party Bus MN is highly descriptive; it is comprised of two generic terms, one ("party bus") being the name that everyone appears to use for the type of vehicle being rented, and the other ("MN") the abbreviation of the state in which both companies do business.  Nevertheless, as with Rent My Party Bus,

---

[18] To be clear, it is important to distinguish the affirmative defense of fair use, on which Defendants would have the burden of proof, from the argument that the descriptive nature of Rent My Party Bus makes it more difficult for Plaintiffs to sustain their burden of proving that the phrase had acquired a secondary meaning that was uniquely associated with Plaintiffs as the source of the party bus services advertised.

[19] Unlike their arguments with regard to the other two asserted marks, Defendants do not appear to argue that summary judgment to Plaintiffs should be denied on the grounds that Defendants made fair use of Party Bus MN, so the Court does not address that argument as to this mark.

each party claims that the term, as a result of their respective advertising efforts, acquired a secondary meaning that serves to identify their own business as the source of party bus services. Each business has, at one time or another, referred to its corporate form as "Party Bus MN LLC." Both side claim that since they first entered the party bus business in Minnesota, they used the name in advertising and promoting their respective services, yet the record is remarkably sparse when it comes to examples of such advertising.

For the reasons already discussed, Defendants' trademark applications and their response to Plaintiffs' Request for Admission do not establish that the mark has acquired a secondary meaning attributable to Plaintiffs' business. Furthermore, as with Rent My Party Bus, Plaintiffs have not demonstrated that they were the exclusive users of Party Bus MN at any time from the time they adopted the mark in 2008 until Defendants' alleged infringing activities began in 2014 and 2015. Nothing in the record states that Plaintiffs enjoyed exclusive use of Party Bus MN, either vis-à-vis the Defendants or the rest of their competitors, from 2008 until Defendants began their allegedly infringing activity. In fact, Plaintiffs' showing on summary judgment with respect to their efforts to promote Party Bus MN is in some ways weaker than their showing with regard to Rent My Party Bus, because they discarded it as the name of their LLC, they used their website partybusmn.com only for the purpose of redirecting customers to rentmypartybus.com, and they merged their previous stand-alone Facebook page for Party Bus MN into the Facebook page for Rent My Party Bus. And, as already noted in the discussion of the other two asserted marks, the record lacks concrete information

about Plaintiffs' sales and customer base, and about the specifics and extent of Plaintiffs' advertising efforts utilizing Party Bus MN.

The Court has already noted in the context of Rent My Party Bus that where the asserted mark is highly descriptive, it is more difficult to show it has acquired a secondary meaning. Accordingly, the Court cannot conclude that Plaintiffs have shown as a matter of law that through their use of Party Bus MN, the term acquired a secondary meaning in connection with Plaintiffs' party bus services. The Court therefore recommends against granting summary judgment of infringement as to Party Bus MN.

### B. Defendants' Revenues and Profits

Plaintiffs urge that if the District Court grants summary judgment of trademark infringement, the appropriate remedy is a disgorgement of Defendants' profits. They argue, further, that the burden is on Defendants to prove their costs of doing business, and because Defendants are unable to do so, Plaintiffs are entitled to an award equal to the entirety of Defendants' revenues during the time when Defendants were infringing Plaintiffs' marks. (Pls.' Mem. Supp. Mot. Summ. J. at 28-33.)

As the Court has already recommended denying Plaintiffs' motion for summary judgment of infringement as to all of the asserted marks, the Court does not address this argument at length. However, even if the District Court declines to adopt the recommendation of this Court and finds Plaintiffs are entitled to summary judgment of infringement, this Court nevertheless recommends finding the record at this stage is insufficient to establish Plaintiffs' entitlement to the award they seek.

Plaintiffs allege Defendants violated 15 U.S.C. § 1125(a). 15 U.S.C. § 1117(a) provides:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

In assessing damages under this section, the plaintiff shall be required to prove defendant's sales only; the defendant must prove any deductions claimed. In other words, "the defendant bears the burden in calculating profits of proving any operating costs to be deducted from sales revenue it realized during the period of trademark infringement." *Tonka Corp. v. Tonka-A-Phone, Inc.*, 805 F.3d 793, 794 (8th Cir. 1986).

A 2011 Eighth Circuit case recognized a circuit split "concerning whether a Lanham Act plaintiff must prove willful infringement, rather than mere infringement, to be eligible for monetary damages under 15 U.S.C. § 1125(a)." *Masters v. UHS of Delaware, Inc.*, 631 F.3d 464, 472 n.2 (8th Cir. 2011). In *Safco Prod. Co. v. Welcom Prod., Inc.*, 799 F. Supp. 2d 967, 996 (D. Minn. 2011), District Judge Susan Richard Nelson concluded "that Section 1117(a) generally does not require willfulness, except where an award of the wrongdoer's profits would be based on the deterrence rationale, but that willfulness is a relevant factor." The court noted that § 1125 of the Lanham Act was amended in 1999, and since then, the Third, Fourth, and Fifth Circuits have held "that willfulness is not required for a violation of Section 1125(a), but remains one of several relevant factors." *Id.* Other relevant factors include:

45

(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006).

Regardless of whether a showing of willfulness is *required* to award an infringer's profits, therefore, precedent in this District as well as in other Circuits recognizes that willfulness is a relevant factor. There is a genuine dispute of material fact regarding whether Defendants' willfully infringed Plaintiffs' asserted marks, so whether willfulness is required or merely a relevant factor, the Court cannot resolve the issue of disgorgement without a more robust record permitting findings of fact on willfulness and other relevant factors, especially when the proposed award is for the entirety of Defendants' revenues.

Finally, the Court recommends against any findings with regard to disgorgement at this stage because Plaintiffs' calculations of revenues are based on assumptions for which there is not an adequate basis in the record. First, Plaintiffs' estimate of Defendants' revenues is at odds with the revenues reported in Defendants' tax returns, and therefore would require the Court to assess the credibility of those returns and of Fernandez's representations about his business's revenues. (*See* Pls.' Mem. Supp. Mot. Summ. J. at 31) ("Here, Defendants' tax returns cannot be relied upon. Fernandez's testimony makes it clear that his business generates more revenue than his tax returns show."). Second, Plaintiffs' estimates are based on an assumed level of business to which Fernandez did not testify. (*Id.* (It's fair to assume that his buses are in operation at least half the time on the remaining days, which comes to 36 trips per week.").)

Plaintiffs' argument also cites Silenko's declaration regarding competitive pricing in the Twin Cities market (Silenko Decl. ¶¶ 13-15), but the statements in his declaration are hearsay and largely based on anecdotal information.

For all these reasons the Court concludes that the record does not support an award representing a "disgorgement of profits" on summary judgment.

## C. "Reverse Domain Name Hijacking"

Plaintiffs also move for summary judgment on Count VII of their SAC. Their motion refers to that count as one for "reverse domain name hijacking." The SAC identifies the statute upon which Count VII rests as 15 U.S.C. § 1114(2)(D)(v). That statute provides:

> A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

Plaintiffs do not dedicate a separate section of their brief to their motion for summary judgment on this count. Instead, at the end of Section I of their memorandum, headed "Safeway Transit Owns the Marks Rent My Party Bus, 953 Limo Bus, and Party Bus MN," they state that "[n]o fact finder is necessary to determine that Safeway Transit is the rightful owner of three protectable mark," The two sentences that follow are the sum total of Plaintiffs' legal discussion of why they are entitled to summary judgment on their claim of "reverse domain name hijacking":

> As a result, judgment on Count VII – reverse domain name hijacking – can be granted in favor of Aleksey Silenko. He is the manager of Safeway Transit, which owns the rights to the service mark Rent My Party Bus. Because Safeway Transit owns the mark, Silenko's use of the domain www.rentmypartybus.com is lawful.

(Pls.' Mem. Supp. Mot. Summ. J. at 22-23.)

Granted, Plaintiffs set forth in their statement of facts the ICANN actions instituted by Defendants that underlie Count VII (Pls.' Mem. Supp. Mot. Summ. J. at 9-11), but Plaintiffs do not discuss, or even cite, the applicable statute or the elements of a claim for relief under the statute, and they provide no case law or legal analysis whatsoever in support of their request for summary judgment. The Court is not required to develop the legal arguments Plaintiffs should have made in order to assess whether, if Plaintiffs had made those arguments, they would have been entitled to summary judgment on this count. *See, e.g.*, *Chay–Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived."). Accordingly, the Court recommends that Plaintiffs' motion for summary judgment on Count VII be denied.

## IV.     Recommendation

Accordingly, based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 79] be **DENIED** in its entirety.

Dated: July 31, 2017                          _s/ Hildy Bowbeer_
                                                   HILDY BOWBEER
                                                   United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.